# IN THE COURT OF APPEALS OF IOWA

No. 17-1504
Filed September 26, 2018

**ESTATE OF PAYTON MONTANA CASTEEL, by and through its administrator, ANNA HUTT; and TIRAN CASTEEL, individually,**
    Plaintiffs-Appellants,

**vs.**

**PATRICIA CHERIE WRAY,**
    Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Page County, James M. Richardson, Judge.


        Parents of teenager who died appeal the jury's verdict of no fault in a tort action based on a vehicle accident. **AFFIRMED.**


        Alfredo G. Parrish and Adam C. Witosky of Parrish Kruidenier Dunn Boles Gribble Gentry Brown & Bergmann, LLP, Des Moines, for appellants.

        Janice M. Thomas and Stephanie A. Koltookian of Bradshaw, Fowler, Proctor & Fairgrave, PC, Des Moines, for appellee.


        Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

Plaintiffs, Anna Hutt and Tiran Casteel, appeal the jury's verdict of no fault in a suit against driver Patricia Wray concerning a vehicle collision in which their son, Payton Casteel, died. Plaintiffs contend the jury's verdict was not supported by sufficient evidence and failed to effectuate substantial justice between the parties. Plaintiffs also argue the court erred in overruling their motion in limine to prevent the introduction of evidence relating to Payton's lack of a motorcycle license and his motorcycle's lack of a headlight. Finally, they contend the court erred in granting summary judgment on their claim of damages for pre-death pain and suffering and pre-death loss of function.

## I.     Background Facts and Proceedings

Wray lived off of Lincoln Street in Coin, Iowa. The driveway to Wray's house is east of the intersection of Lincoln and North Sixth Street. She lived next door to Anna Hutt and her sixteen-year-old son, Payton. On May 21, 2014, at approximately 6:25 p.m., Patricia Wray drove her van east on Lincoln Street on her way home from work. Payton was at his house with friends, hanging out in the garage. Payton asked one of his friends to watch him as he rode his dirt bike along Lincoln Street. Payton left his house and headed west on Lincoln. At some point, as Wray drove east on Lincoln she passed by Payton, heading west. After cresting a hill on Lincoln, Payton turned his motorcycle around and headed east, approaching Wray's van. By this time, the friend who had been watching Payton returned to the garage.

As Wray neared her driveway, she turned on her left turn signal. While turning, Payton hit the van behind the driver's side door. The impact threw Payton

from the motorcycle across the front of the van, and he landed on a nearby grassy area, severely injured. Wray did not see Payton before turning but testified she caught a glimpse of something as she turned. No one witnessed the collision. Skid marks in the westbound lane of traffic indicate Payton was in that lane prior to hitting the van.

After Payton landed in the grass, Wray called for paramedics and Payton's friends approached him to determine his state of injury. Paramedics rendered aid at the scene, and Payton was transported by helicopter to Creighton Medical Center in critical condition. While at the hospital, Payton was unresponsive and on life support. Payton passed away on May 22.

On May 20, 2016, Payton's estate, through his mother as administrator, and Payton's father, Tiran Casteel, sued Wray claiming she negligently operated her vehicle, and as a result of her negligence Payton was injured, which resulted in his death. Tiran also sued Wray individually for loss of parental consortium. In June 2017, Wray filed a motion for partial summary judgment and asked for the dismissal of certain categories of damages[1] as well as the loss-of-parental-consortium claim. The court granted the motion in part.[2]

The plaintiffs filed a motion in limine, seeking to exclude, among other things, evidence that Payton was not licensed to operate a motorcycle on the highway and evidence that Payton's motorcycle was not "street legal," as it lacked

---

[1] Wray sought summary judgment on the plaintiffs' claims for: (1) other financial expenses; (2) the reasonable present value of Payton's life to his estate; (3) physical pain and mental anguish; (4) physical impairment in the past, present, and future; and (5) loss of present and future earnings.

[2] The court granted summary judgment as to damages for other financial expenses, physical pain and mental anguish, and physical impairment. The court denied summary judgment for the other categories of damages and the loss-of-parental-consortium claim.

turn signals and a headlight. The plaintiffs contended these facts had no connection to the collision. Before commencing trial, the court heard from both parties and overruled the plaintiffs' motion on this evidence. After a three-day trial, the jury returned a verdict in favor of Wray, finding she was not at fault.

Plaintiffs moved for a new trial on the basis that the jury's verdict of no fault was not supported by sufficient evidence and failed to administer substantial justice. They argued Wray bore some degree of fault as she failed to keep a proper lookout before turning. They also argued the court erred in overruling their motion in limine and allowing evidence of Payton's lack of a motorcycle license and the lack of headlights on his motorcycle. Lastly, they contended the court erred in denying their request of damages for pre-death pain and suffering and pre-death loss of function.

The court denied the motion, concluding:

Plaintiffs' objections to jury instructions were previously made and ruled upon during trial. Questions of negligence and proximate cause are for the trier of fact. In this case, evidence supports the jury's findings that decedent's negligence was the cause of the accident. The jury's decision was supported by sufficient facts.

Plaintiffs appeal.

## II.     Standard of Review

"Our review of a district court's ruling on a motion for new trial depends on the grounds raised in the motion." *Bryant v. Parr*, 872 N.W.2d 366, 375 (Iowa 2015). "If the motion for a new trial was based on a discretionary ground, we review it for an abuse of discretion. If the ruling granting a new trial was prompted by a motion based on a legal question, . . . our review is for errors at law." *Olson v. Sumpter*, 728 N.W.2d 844, 848 (Iowa 2007) (citation and internal quotation

marks omitted). Our review of the trial court's decision on whether the verdict administers substantial justice is for an abuse of discretion. *Estate of Hagedorn ex rel. Hagedorn v. Peterson*, 690 N.W.2d 84, 87 (Iowa 2004). "In ruling upon motions for new trial, the district court has a broad but not unlimited discretion in determining whether the verdict effectuates substantial justice between the parties." Iowa R. App. P. 6.904(3)(c).

### III. Analysis

#### A. Sufficiency of the Evidence and Substantial Justice

"If a jury verdict is not supported by sufficient evidence and fails to effectuate substantial justice, a new trial may be ordered." *Olson*, 728 N.W.2d at 850. Iowa Rule of Civil Procedure 1.1004(6) allows the court to grant a new trial if the verdict "is not sustained by sufficient evidence, or is contrary to law" and "materially affects a movant's substantial rights." We review the ruling on this ground for the correction of legal error. *Hagedorn*, 690 N.W.2d at 87.

When a party challenges the sufficiency of evidence to support the jury's factual findings, we examine the record to determine whether those findings are supported by substantial evidence. *City of Cedar Falls v. Cedar Falls Cmty. Sch. Dist.*, 617 N.W.2d 11, 16 (Iowa 2000). "We view the evidence in the light most favorable to the verdict and need only consider the evidence favorable to [defendant] whether it is contradicted or not." *Olsen v. Drahos*, 229 N.W.2d 741, 742 (Iowa 1975). We "give weight to the fact the trial court, with benefit of seeing and hearing the witnesses, observing the jury and having before it all incidents of the trial, did not see fit to interfere." *Id.* at 743. Questions of negligence and proximate cause are for the jury. Iowa R. App. P. 6.904(3)(j).

Further, "the trial court has inherent power to set aside a verdict when the court concludes 'the verdict fails to administer substantial justice.'" *Hagedorn*, 690 N.W.2d at 87 (citation omitted). Our review of the ruling on this ground is for an abuse of discretion. *Id.* at 87–88. An abuse of discretion occurs when the court exercises its discretion "on grounds clearly untenable or to an extent clearly unreasonable." *Id.* "When determining whether the court abused its discretion based on substantial justice not being achieved by the verdict, precedents are of little value. Each case must be decided by relating its own unique circumstances to the general principles above announced." *Kalvik ex rel. Kalvik v. Seidl*, 595 N.W.2d 136, 140 (Iowa Ct. App. 1999). "When the evidence amply supports the verdict reached by the jury, a district court abuses its discretion when it grants a new trial because it would have reached a different result." *Crow v. Simpson*, 871 N.W.2d 98, 108 (Iowa 2015).

Whether a verdict is supported by sufficient evidence and effects substantial justice are independent grounds for challenging jury verdicts, however we will discuss them together since the plaintiffs' arguments in support of both grounds are identical. *See Hagedorn*, 690 N.W.2d at 87. In denying the motion for new trial, the trial court determined "evidence supports the jury's findings that [Payton's] negligence was the cause of the accident. The jury's decision was supported by sufficient facts and shall not be disturbed."

The jury was instructed the plaintiffs had to prove Wray was "at fault." "At fault" was defined as "one or more acts or omissions towards the person of . . . another which constitutes negligence." Negligence was defined as a "failure to use ordinary care," which is "the care which a reasonably careful person would use

under similar circumstances." The jury was additionally instructed plaintiffs were required to prove Wray was negligent in one or more of the following ways:

> (a) in failing to operate her motor vehicle in a reasonable and proper manner;
> (b) in failing to maintain an assured clear distance ahead;
> (c) in failing to drive at a safe and reasonable speed as she approached her turn;
> (d) in failing to maintain control of the motor vehicle and take reasonable precautions as she approached her turn;
> (e) in failing to keep a proper lookout; and
> (f) in failing to act as a reasonable person would under the circumstances.

Plaintiffs argue the record does not support the verdict of no fault on the part of Wray. They contend the jury failed to properly apply the facts presented to the jury instructions given by the district court. They argue that, though Payton was not without fault, the evidence demonstrates Wray had some level of fault for the accident and Payton's death because Wray failed to keep a proper lookout before turning into her driveway.

"It is the jury's role to weigh the evidence and assess the credibility of witnesses." *Wildner v. Wendorff*, No. 05-1998, 2006 WL 2265453, at *2 (Iowa Ct. App. Aug. 9, 2006). "[T]he jury was free to sort through the disputed and undisputed facts and to accept or reject any testimony, given that credibility is a fact question." *Wagner v. State*, 858 N.W.2d 36 (Iowa Ct. App. 2014). Here, there were no direct witnesses to the collision, so many of the facts concerning the accident were disputed. Accordingly, based upon the evidence provided at trial, the jury reasonably could have accepted Wray's assertions and found that as she drove east on Lincoln Street, she passed by Payton who drove westbound on Lincoln, turned on her left turn signal as she approached her driveway, slowed

down, checked her mirrors, and, after seeing no one, proceeded with her left turn, but caught a glimpse of something as she turned left before Payton collided with her van. Further, the jury could reasonably have found that Payton was driving a dirt bike that was not "street legal" over the speed limit at the time of the collision and only used the rear brake when attempting to stop rather than both the front and rear brakes of the motorcycle. If the jury accepted these as true, it provides sufficient support for the jury's determination that Wray was not at fault for the collision. As such, the verdict did not fail to effectuate substantial justice. *See Johnson v. Knoxville Cmty. Sch. Dist.*, 570 N.W.2d 633, 641 (Iowa 1997) ("Substantial justice is inextricably linked to the adequacy of a jury verdict.").

B. Motions in Limine

The plaintiffs contend a new trial is warranted because the trial court improperly allowed evidence of Payton's lack of a motorcycle license/endorsement and the motorcycle's deficient condition as to its headlights and turn signals. The plaintiffs' motion in limine attempted to exclude any mention that Payton was not licensed to operate a motorcycle on the highway and that his motorcycle was not legal to ride on public highways as it lacked turn signal and headlights. The plaintiffs argued that there is no causal connection between the lack of a license or equipment and the collision.

"Generally, the district court's ruling on a motion in limine is not subject to appellate review because the error, if any, occurs when the evidence is offered at trial and is either admitted or refused." *Wailes v. Hy-Vee, Inc.*, 861 N.W.2d 262, 264 (Iowa Ct. App. 2014). However, "[w]hen the court's ruling on a motion in limine is unequivocal and leaves no question that the challenged evidence will or will not

be admitted at trial, counsel need not take steps at trial to preserve error." *Id.* When "the district court's ruling on a motion in limine is unequivocal, 'the decision on the motion has the effect of [an evidentiary] ruling' and thus preserves the issue for appellate review." *Id.* (alteration in original) (quoting *State v. Tangie*, 616 N.W.2d 564, 569 (Iowa 2000)).

Here, the court in ruling on the plaintiff's motion in limine stated:

It will be the Court's ruling on Plaintiffs' motion in limine that it will be sustained as to the offenses and conditions of both Payton Casteel and Tiran Casteel, but in all other aspects the motion will be overruled. The Court will make the appropriate rulings at the time the evidence is presented during the course of the trial.

We do not find the court's ruling to be unequivocal and instead the ruling indicated to all parties that the court would answer questions about whether or not to admit challenged evidence when the evidence was actually presented at trial. Therefore, the plaintiffs were required to object to the evidence of the motorcycle's lack of a headlight and Payton's lack of licensure at the time the evidence was presented during trial in order to preserve error. Plaintiffs made no such objections and therefore error on the district court's acceptance of the challenged evidence was not preserved.

C.    Jury Instruction

We review alleged errors in jury instructions for correction of errors at law. *Rivera v. Woodward Res. Ctr.*, 865 N.W.2d 887, 891 (Iowa 2015). "Litigants are entitled to have their legal theories submitted if those theories are supported by the pleadings and substantial evidence in the record." *Thompson v. City of Des Moines*, 564 N.W.2d 839, 846 (Iowa 1997). The instructions to the jury "must convey the applicable law in such a way that the jury has a clear understanding of

the issues it must decide." *Id.* Trial courts "must refuse to instruct on 'an issue having no substantial evidential support or which rests on speculation.'" *Id.* (quoting *Clinton Land Co. v. M/S Assocs.*, 340 N.W.2d 232, 234 (Iowa 1983)).

"Generally, under Iowa Rule of Civil Procedure 1.924, error in jury instructions is waived if not raised before closing arguments are made to the jury." *Olson*, 728 N.W.2d at 848; *accord* Iowa R. Civ. P. 1.924 ("[A]ll objections to giving . . . any instruction must be made in writing or dictated into the record, out of the jury's presence, specifying the matter objected to and on what grounds. No other grounds or objections shall be asserted thereafter, or considered on appeal.").

The plaintiffs claim the court erred in instructing the jury on the issues of the motorcycle's lack of headlights and Payton's lack of a motorcycle license at the time of the collision. They contend the defendant presented no evidence connecting the absence of a license and headlights as proximate causes of the collision. The plaintiffs specifically challenged the court's inclusion of jury instructions 16H and 16I in their motion for a new trial.

Instruction 16H provided, "Every motorcycle shall be equipped with at least one and not more than two head lights. A violation of this law is negligence." The plaintiffs objected to the defendant's proposed addition of the absence of headlights to instruction 15, which identified the defendant's specific claims of negligence against Payton. The court agreed and overruled the defendant's proposed addition. However, though the plaintiffs assert they objected to jury instruction 16H, the record indicates the plaintiffs expressly waived objection to this instruction—"Plaintiffs have no objection to 16 A, B, C, D, E, F, G or H." Therefore, plaintiffs waived error as to this jury instruction.

Instruction 16I provided, "A person shall not operate any motor vehicle upon a highway in Iowa unless the person has a driver's license issued by the Iowa Department of Transportation valid for the vehicle's operation." Plaintiffs did specifically object to 16I and therefore properly preserved error as to their objection to the instruction. The plaintiffs argued the instruction should not be given to the jury because Wray presented insufficient evidence to link Payton's lack of licensure to the collision. The court overruled the objection.

Instruction 16I restates Iowa Code section 321.174 (2016).[3] Plaintiffs are correct in their assertion that absent a causal connection to the collision, evidence that Payton lacked a driver's license is not relevant and inadmissible. *See Ruckman v. Cudahy Packing Co.*, 300 N.W. 320, 321 (1941) ("[T]he mere fact that the operator of a motor vehicle does not have a license or the fact that the motor vehicle is unregistered will not bar a recovery for injuries sustained to his person or property through the negligence of another unless there is a causal relation between his failure to comply with the law and the resulting injuries.").

The plaintiffs do not dispute the fact that Payton did not have a motorcycle license, and they did not object when several witnesses testified to Payton's lack of licensure. In her answer, Wray claimed Payton's injuries were caused by his own actions. In further pleadings, Wray argued Payton's lack of licensure was related to the collision because, without a license, there was no evidence he had the requisite education and skills to safely operate a vehicle. Wray contended that

---

[3] "A person, except those expressly exempted, shall not operate any motor vehicle upon a highway in this state unless the person has a driver's license issued by the department valid for the vehicle's operation." Iowa Code § 321.174(1).

had Payton been licensed, he would have had the knowledge and skill to safely drive a vehicle on the road—including following speed limits, how to safely pass other vehicles, and how to safely control his vehicle in a variety of situations.

During trial, both parties presented evidence that showed Payton was driving over the speed limit of forty miles per hour at the time of the collision, though how much over the speed limit was disputed. Further, an accident reconstruction specialist called by Wray testified that more skilled riders would know to use both the front and rear brakes on a motorcycle when trying to stop. He determined Payton only used the rear brake and by using only the rear brake, the motorcycle skidded and was out of control. He testified a more skilled rider would know skidding a rear tire is dangerous and can lead to loss of directional control and cause the bike to flip and eject the rider.

If Wray had only introduced evidence that Payton did not have a motorcycle license without presenting testimony or evidence to its significance or connection to the collision, then the plaintiffs would be correct and "the fact that plaintiff had no license [would be] no defense to the action." *See Stumpf v. Reiss*, 502 N.W.2d 620, 622 (Iowa Ct. App. 1993). However, Wray did present testimony of a causal connection which generated a jury question on whether Payton's inexperience and lack of knowledge contributed to the collision. *See Hardwick v. Bublitz*, 119 N.W.2d 886, 892 (Iowa 1963) ("[T]he evidence was such the jury could properly find the reason Dean drove off the road instead of turning was due to inexperience. Inexperience covers the whole field of negligence in the operation of a motor vehicle."). Questions of negligence and proximate cause are for the jury. Iowa R.

App. P. 6.904(3)(j). Accordingly, the district court did not err in giving instruction 16I.

D.     Pre-Death Pain, Suffering, and Loss of Function

Finally, plaintiffs contend the court erred in prohibiting them from seeking damages for Payton's pre-death pain, suffering, and loss of function. They argue evidence in the record shows Payton was conscious, at least briefly, in the moments following his impact with Wray's van, specifically that he had a pulse at the time he was transported to the hospital.

"Pain and suffering damages are compensable even if the injured person was not conscious for an extended period of time." *Kuta v. Newberg*, 600 N.W.2d 280, 285 (Iowa 1999). "Physical pain and suffering includes bodily suffering, sensation, or discomfort." *Estate of Pearson ex rel. Latta v. Interstate Power & Light Co.*, 700 N.W.2d 333, 347 (Iowa 2005). Recovery is permitted "for a decedent's pain and suffering in wrongful death actions when the item has substantial evidentiary support." *Schlichte v. Franklin Troy Trucks*, 265 N.W.2d 725, 727 (Iowa 1978). "[L]oss of function of the body may be an element of recovery 'for the deprivation of full mind and body, separate and apart from impairment of earning capacity.'" *Brant v. Bockholt*, 532 N.W.2d 801, 804 (Iowa 1995) (citation omitted). This "element of damage relates to functional impairment as opposed to structural impairment of the body. It is the inability of a particular body part to function in a normal manner." *Id.* at 804–05. However, "damages for pain and suffering of a decedent may not be recovered 'if death or unconsciousness is instantaneous.'" *Kuta*, 600 N.W.2d at 285 (citation omitted). "An unconscious person does not suffer pain." *Schlichte*, 265 N.W.2d at 728.

"A district court cannot submit a jury instruction 'on "an issue having no substantial evidential support."'" *Phelan-Ruden v. Suddreth*, No. 06-0173, 2007 WL 1062862, at *3 (Iowa Ct. App. Apr. 11, 2007) (quoting *Thompson*, 564 N.W.2d at 846). We disagree with plaintiffs' assertion Payton was conscious or had a pulse. Here, the record does not contain sufficient support that he suffered any pain or was conscious after the collision. Payton suffered a severe and traumatic head injury, and the record reflects that he had no pulse or blood pressure at the scene. Numerous notations throughout the medical records indicate there was no pain present, Payton's pupils were fixed and dilated at the scene and at the hospital, he did not exhibit any spontaneous movement or respirations, and he had no response to any noxious stimuli. Upon examination of the record, we conclude there is not substantial evidence Payton was conscious or in pain after the collision. Accordingly, the court did not err in granting summary judgment and refusing to submit pre-death pain, suffering, and loss of function to the jury.

## IV. Conclusion

We find the jury's verdict is supported by sufficient evidence and effects substantial justice. We therefore conclude the court did not err or abuse its discretion in denying a new trial. We also find the plaintiffs failed to preserve error on their claims on the admissibility of challenged evidence and jury instruction 16H. We find no error in jury instruction 16I. Finally, we find the court did not err in denying the request to submit pre-death pain, suffering, and loss of function to the jury.

**AFFIRMED.**